IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| CYNTHIA DENEE MILLER, | ) | Case No. 4:12-cv-00006 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| STRATFORD HOUSE RETIREMENT COMMUNITY, | ) ) | |
| | ) | By: Jackson L. Kiser |
| Defendant. | ) | Senior United States District Judge |

Before me is Defendant's Motions to Dismiss and Alternative Motion for More Definite Statement. On April 20, 2012, I held a hearing on this motion at which Plaintiff, proceeding *pro se*, and counsel for Defendant appeared and presented argument. Having thoroughly reviewed the briefs, the record, and the arguments of both parties, I find that the matter is now ripe for decision. After careful consideration, and for the reasons set forth below, Defendant's Motions to Dismiss and Alternative Motion for More Definite Statement is **GRANTED**. Plaintiff is granted leave to file an amended complaint as to her claim for wrongful termination.

I. STATEMENT OF FACTS AND PROCEDURAL HISTORY

This case arises out of injuries that Plaintiff Cynthia Denee Miller ("Plaintiff") sustained in the course of her employment with Defendant Stratford House Retirement Community ("Defendant") in Danville, Virginia. The Complaint filed in this case contains sparse factual allegations. Accordingly, the facts as set forth below are taken largely from the materials

1

submitted by Defendant with its Motions to Dismiss or Alternative Motion for a More Definite Statement.[1]

Plaintiff began working at Defendant's retirement community as a certified nursing assistant in September 2002. (Def.'s Br. in Supp. of Mot. to Dis. Ex. A, Miller Dep. 16:1–8, Sept. 7, 2011 [hereinafter "Miller Dep."] [ECF No. 7].) In February 2009, Plaintiff sustained an injury to her right arm and shoulder while performing Tae Bo exercises at her home. (*Id.* 18:11–19:13.) She underwent treatment for this injury with Dr. Jonathan Krome ("Dr. Krome") at Danville Orthopedics Clinic and took temporary leave from work. (*Id.* 19:14–20:24.) Thereafter, she returned to work subject to certain lifting restrictions, and on May 1, 2009, Dr. Krome released her to full duty. (*Id.* 21:3–22:15.) This injury is not at issue in this case.

On May 24, 2009, Plaintiff again injured her right arm while helping one of Defendant's residents alight from a toilet seat. (*Id.* 24:23–31:4.) After this incident, she began experiencing numbness throughout her right arm. (*Id.* 29:20–31:11.) On or about May 27, 2009, she again sought treatment from Dr. Krome, who referred her for a neurological assessment to take place on June 7, 2008. (*Id.* 32:13–33:12.) In the interim, on June 4, 2009, Plaintiff sustained an additional injury when a resident approached her from behind and grabbed her around the neck. (*Id*. 33:14–35:14.) As a result, she began experiencing pain on the right side of her neck. (*Id.* 35:15–34.) Following this incident, Plaintiff underwent physical therapy and continued to work

---

[1] Courts "generally do not consider materials other than the complaint and documents incorporated into it when evaluating that complaint under Rule 12(b)(6), though courts may consider a document attached by the defendant to its motion to dismiss where the document 'was integral to and explicitly relied on in the complaint' and where 'the plaintiffs do not challenge its authenticity.'" *Am. Chiropractic Ass'n, Inc. v. Trigon Healthcare, Inc*., 367 F.3d 212, 234 (4th Cir. 2004) (internal quotation marks omitted). The Complaint does not explicitly rely on any of the exhibits attached to Defendant's Motions to Dismiss or Alternative Motion for More Definite Statement. Accordingly, in ruling on Defendant's motion to dismiss pursuant to Rule 12(b)(6), I consider only the facts as stated in the Complaint.

subject to restrictions on lifting and use of her right arm. (*Id.* 38:15–39:25.) With these restrictions in place, Plaintiff continued to work until December 2009. (*Id.*)

On December 6, 2009, Plaintiff suffered yet another work-related injury when a resident suffering from dementia struck her on her right shoulder as she was helping him dress. (*Id.* 40:7–41:20.) Following this incident, Plaintiff again saw Dr. Krome and underwent testing and treatment with both a neurologist and a neurosurgeon. (*Id.* 42:22–45:15.) On December 8, 2009, Plaintiff returned to work, again subject to restrictions on lifting and use of her right arm, and continued to work until January 29, 2010. (Def.'s Br. in Supp. of Mot. to Dis. Ex. B, ¶ 4.) On January 29, 2010, Plaintiff arrived at work and dropped off at the front desk a note from a nurse practitioner indicating that she could not return to work until February 12, 2010. (*Id.* ¶ 5.) She did not make any attempt to speak with her supervisor. (*Id.*) On February 12, 2010, Plaintiff again dropped off a note from the same nurse practitioner, indicating that she could not return to work until March 18, 2010, and immediately left the premises without speaking with her supervisor. (*Id.* ¶ 6.) From January 29, 2010, to March 4, 2010, Plaintiff did not communicate with Defendant's supervisory personnel about her absences from work despite Defendant's numerous attempts to contact her. (*Id.* ¶ 7.)

On March 4, 2010, Plaintiff underwent an independent medical examination by Dr. Francis X. Walsh ("Dr. Walsh"), a neurologist. (*Id.* ¶ 8.) Dr. Walsh released Plaintiff to return to work so long as she did not use her right arm. (*Id.*) On March 10, 2012, Holly Stanfield ("Stanfield"), Defendant's Director of Human Relations, participated in a conference call with Plaintiff in which she was instructed to return to work the next day at 7:00 a.m., subject to the work restrictions set forth by Dr. Walsh. (*Id.* ¶ 9.) Plaintiff arrived at work at the scheduled time but refused to work unless her supervisor signed a note indicating that Defendant was

violating her primary care physician's orders. (*Id.* ¶ 10.) When her supervisor refused to sign the note, Plaintiff left the premises. (*Id.*) The following day, Stanfield sent Plaintiff a letter notifying her that she was terminated due to her "no-call, no-show for work starting January 29, 2010." (*Id.*)

Throughout the course of events as set forth above, Plaintiff was intermittently filing workers' compensation claims with the Virginia Workers' Compensation Commission for the three injuries sustained during her employment with Defendant. (*Id.* ¶ 3; Def.'s Br. in Supp. of Mot. to Dis. Ex. C, pg. 1, 2, 3.) On December 17, 2009, and April 4, 2011, she filed claims for benefits for the injury sustained on May 24, 2009. (Def.'s Br. in Supp. of Mot. to Dis. Ex. C, pg. 1.) She sought a determination of a compensable injury, a lifetime medical award, and a permanent partial disability award. (*Id.*) On December 23, 2009, January 19, 2010, February 2, 2010, and April 7, 2011, she filed claims for benefits for the injury sustained on June 4, 2009. (*Id.* pg. 2.) She sought determination of a compensable injury and a lifetime medical award. (*Id.*) On December 21, 2009, January 11, 2011, and April 7, 2011, she filed claims for benefits for the injury sustained on December 6, 2009. (*Id.* pg. 3.) She sought temporary total disability benefits beginning January 29, 2010, through March 10, 2010, permanent partial disability benefits, and a lifetime medical award. (*Id.*) On February 27, 2012, the deputy commissioner entered an opinion setting forth findings of fact and conclusions of law as to these claims. (Def.'s Br. in Supp. of Mot. to Dis. Ex. C.) Based on these findings and conclusions, the deputy commissioner awarded Plaintiff the following relief: medical benefits pursuant to Virginia Code § 65.2-603 for as long as necessary for medical treatment authorized and directly related to her May 24, 2009, right shoulder injury; medical benefits pursuant to Virginia Code § 65.2-603 for as long as necessary for medical treatment authorized and directly related to her June 4, 2009,

4

neck injury; and payment of compensation in the amount of $271.25 per week, beginning January 29, 2010, through March 10, 2010, inclusive, and medical benefits pursuant to Virginia Code § 65.2-603 for as long as necessary for medical treatment authorized and directly related to her May 24, 2009, right shoulder injury. (*Id.* pg. 16.)

On September 18, 2010—prior to the commission's entry of the above opinion—Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that Defendant had discharged her "in violation of the Americans with Disabilities Act of 1990." (Def.'s Br. in Supp. of Mot. to Dis. Ex. B, Charge of Discr.) On or about November 29, 2011, the EEOC issued a Dismissal and Notice of Rights informing Plaintiff that it was "unable to conclude that the information obtained establishes violations of the statutes." (Compl. Ex. 2. [ECF. No. 3].)

On February 1, 2012, Plaintiff, proceeding *pro se*, filed the instant suit against Defendant, using a form complaint, ostensibly under the Equal Employment Opportunities Act, 42 U.S.C. § 2000e, *et seq*. (Compl.) The Complaint contains very few facts supporting Plaintiff's theory of recovery. At one point, Plaintiff asserts that the real reason for her discharge was that she was "[i]njured on the job on three separate occasion[s]." (*Id.* pg. 3.) In response to the question "What relief do you want from this court?" Plaintiff simply answers "Monetary," and asserts that she has suffered damages. (*Id.* pg. 4–5.) In response to the question of what damages she has suffered, Plaintiff responds: "I am limited to what I can and cannot do. I have a tremor in my right hand." (*Id.* pg. 5.) In a brief letter attached to the front of the form complaint, Plaintiff states the following:

> I was injured on the job on three different occasions and never received any compensation from Stratford House center. I was never given any listing of doctors. I communicated with their insurance company caseworker, until I got a lawyer. Every excuse

5

> I got from my doctor was taken to the employer. They expected me to return to work before my leave was over. I was terminated while on medical leave. I never was reimbursed for co-pays. I am left with a tremor in my hand and my right shoulder/arm hurts to this date. I have serious limitations with what I can and cannot do my [sic] arm.

(Compl.) In the civil cover sheet filed with her Complaint, Plaintiff does not cite a specific statute under which she seeks recovery. (Compl. Ex 1.) In the space provided for this information, she states simply "wrongful termination and damages." (*Id.*) In the space provided for a "[b]rief description of cause," Plaintiff states simply "injured on the job, denied worker's comp.[,] and eventually terminated." (*Id.*) Plaintiff, therefore, appears to assert two claims: (1) that Defendant failed to compensate her for the injuries she sustained on the job; and (2) that Defendant wrongfully terminated her because of her injuries.

On March 6, 2012, Defendant filed its Motions to Dismiss and Alternative Motion for More Definite Statement, (Def.'s Mot. to Dis. [ECF No. 6]), and Brief in Support (Br. in Supp. of Def.'s Mot. to Dis. [ECF. No. 7]). Defendant first argues that the Court should dismiss Plaintiff's case for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). (Br. in Supp. of Def.'s Mot. to Dis. pg. 4.) It argues that the Virginia Workers' Compensation Act provides the exclusive remedy for Virginia employees injured during the course of their employment; therefore, to the extent that Plaintiff seeks to recover from Defendant for such injuries, her claim is barred. (*Id.* pg. 6.) Defendant further argues that Plaintiff does not assert wrongful termination under any federal statute but complains only that she "was terminated while on medical leave." (*Id.* pg. 7.) She has not pled any facts to establish that she suffers from a disability under the Americans with Disabilities Act ("ADA"). (*Id.*) Defendant argues, therefore, that this Court is without jurisdiction to hear Plaintiff's claims and should dismiss them.

6

Defendant next argues that the Court should dismiss Plaintiff's wrongful termination claim for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) because the allegations contained in the Complaint are insufficient to establish her right to relief under the ADA. (*Id.* pg. 7, 9.) Specifically, the facts as alleged in the Complaint do not show that Plaintiff was a "qualified individual with a disability." (*Id.* pg. 10.) She alleges that she "was terminated while on medical leave" and apparently contends that she could not work at all at the time of termination. (*Id.*) Moreover, Defendant argues that the Complaint and materials attached thereto[2] show that Plaintiff was not fulfilling her employer's legitimate expectations at the time of her termination. (*Id.* pg. 11.) Plaintiff did not return to work after being released by her doctor. (*Id.*) In addition, Defendant argues that the Complaint and materials attached thereto fail to establish that Plaintiff's termination constituted unlawful discrimination because she was terminated for taking leave despite the fact that her doctor had released her to return to work. (*Id.* pg. 12.)

Finally, Defendant argues that, if the Court determines that its motion to dismiss should be converted into a motion for summary judgment, the parties' exhibits demonstrate that granting summary judgment in its favor is appropriate. (*Id.*) Under the summary judgment standard, the relevant evidence shows that Plaintiff did not suffer from a permanent disability, but rather from a temporary workplace injury. (*Id.* pg. 13.) Because she does not fall within the scope of the ADA's protection, the Court should grant summary judgment in favor of Defendant.

On March 20, 2012, Plaintiff filed a response to Defendant's Motions to Dismiss and Alternative Motion for More Definite Statement. (Pl.'s Resp. [ECF No. 108].) In her response,

---

[2] Attached to the Complaint are the EEOC's Dismissal and Notice of Rights and right to sue letter. (Compl. Ex. 2.)

Plaintiff largely reiterates the essential facts as set forth above. (*Id.*) Again, she complains that she sustained injuries on the job and never received compensation from Defendant. (*Id.*) She appears, however, to devote the bulk of her response to bolstering her wrongful discharge claim.[3] She further asserts that she continues to suffer from a "tremor in [her] hand" and that her "right shoulder/arm hurts to this date." (*Id.*) She maintains that she has "serious limitations with what [she] can and cannot do with [her] right arm" as a result of her work-related injuries. (*Id.*) She concludes by arguing that, having succeeded in her claim for workers' compensation benefits, she should not have been terminated. (*Id.*) I held a hearing on Defendant's Motions to Dismiss and Alternative Motion for a More Definite Statement on April 20, 2012, at which Plaintiff and counsel for Defendant appeared and presented oral argument.

## II. STANDARD OF REVIEW

As an initial matter, I must construe *pro se* complaints liberally, imposing "'less stringent standards than the formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Defendant first moves to dismiss

---

[3] In her response, Plaintiff asserts:

> [Stratford House] expected me to return to work before my doctor released me. I was told to return back to work the next morning[,] and I told Holly [Stanfield] I had a dr.'s [sic] appointment in [sic] that morning and she said I need to schedule my appointments when I was off. According to my prior work schedule pattern[,] I would be off on that date. She said the report states for me to return to work effective immediately. I called my lawyer and told him[,] and he said go to work and tell my supervisor if they insisted I work and violate my dr.'s [sic] order then I needed them to sign my letter, because it's illegal to violate a physician's order . . . Holly told Martha [Hodges] to tell me she wasn't going to sign any paper and that it was my expectations [sic] to work today and that I could leave if I wanted too [sic] but it would be on me. I was terminated while on medical leave.

(Pl.'s Resp.)

8

Case 4:12-cv-00006-JLK-RSB   Document 20   Filed 04/24/12   Page 8 of 19   Pageid#: 145

for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). "Unlike the procedure in a 12(b)(6) motion where there is a presumption reserving the truth finding role to the ultimate factfinder, the court in a 12(b)(1) hearing weighs the evidence to determine its jurisdiction." *Id.* A district court should dismiss a complaint for lack of subject matter jurisdiction if a plaintiff can prove no set of facts in support of his claim which would entitle him to federal subject matter jurisdiction. *Glenn v. LaFon*, 427 F. Supp. 2d 675, 677 (W.D. Va. 2006). The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982) (citing *Mims v. Kemp*, 516 F.2d 21 (4th Cir. 1975)). I must accept all well-pleaded factual allegations as true. *Glenn*, 427 F. Supp. 2d at 677 (citing *Jenkins v. McKeithen*, 395 U.S. 411 (1969); *Falwell v. City of Lynchburg*, 198 F. Supp. 2d 765, 771–72 (W.D. Va. 2002)). I may consider the pleadings as evidence on the issue of jurisdiction while also considering evidence outside the pleadings without converting the motion into one for summary judgment. *Evans*, 166 F.3d at 647 (citing *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)). In such a case, the district court applies the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists. *Glenn*, 427 F. Supp. 2d at 677 (citing *Richmond, Fredericksburg & Potomac R.R. Co.*, 945 F.2d at 768). A court should grant the motion only where the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law. *Id.* (citing *Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995)).

In the alternative, Defendant moves to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a

complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 149. In determining facial plausibility, I must accept all factual allegations in the complaint as true. *Iqbal*, 129 S. Ct. at 1949. The Complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and sufficient "[f]actual allegations . . . to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555 (internal quotation marks omitted). Therefore, the Complaint must "allege facts sufficient to state all the elements of [the] claim." *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003). Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a pleading that merely offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. In the alternative, Defendant proposes that I convert its Rule 12(b)(6) motion into a summary judgment motion.

## III. DISCUSSION

I first consider Defendant's Rule 12(b)(1) motion and determine whether this Court has subject matter jurisdiction and then proceed to address Defendant's 12(b)(6) motion for failure to state a claim upon which relief may be granted.

### A. Defendant's Motion to Dismiss for Lack of Jurisdiction Pursuant to Rule 12(b)(1)

From the facts as alleged in the Complaint, it is difficult to determine the basis of Plaintiff's claims or her theory of the case. In the letter attached to her Complaint, Plaintiff asserts that she "never received any compensation from Stratford House Center" for her work-

10

related injuries. (Compl.) On the civil cover sheet attached to the Complaint, she states "injured on the job, denied worker's comp." in the space designated for "[b]rief description of cause." (Compl. Ex. 1.) Plaintiff appears, therefore, to be making a claim for workers' compensation benefits directly against Defendant. Alternatively, she may be making a common law personal injury claim for damages against Defendant.[4] The Court does not have subject matter jurisdiction over these claims because the Virginia Workers' Compensation Act ("VWCA") provides Plaintiff's exclusive remedy for any injuries suffered during the course of employment. *See* Va. Code § 65.2-307(A) (2012).

The VWCA provides that a worker who is injured in the course of a statutory employer's business shall be entitled to compensation from the employer regardless of fault. *See id.* If an injured employee elects to recover workers' compensation benefits from his employer, his recovery "shall exclude all other rights and remedies . . . at common law or otherwise." *Id.* Accordingly, when a plaintiff's injury arises out of the course of employment, his exclusive remedy is under the VWCA. *Hendricks v. Wal-Mart Stores, Inc.*, 142 F. Supp. 2d 752, 754 (W.D. Va. 2001). Therefore, the district courts lack subject matter jurisdiction over civil actions brought to recover for work-related injuries. *See Evans*, 166 F.3d at 652; *McGowan v. ABM Janitorial Servs.*, No. 2:10cv388, 2011 U.S. Dist. LEXIS 70621 at *31 (E.D. Va. Jun. 29, 2011); *Glenn v. LaFon*, 427 F. Supp. 2d 675, 680 (W.D. Va. 2006); *Hendricks*, 142 F. Supp. 2d at 756.

Plaintiff clearly elected to recover workers' compensation benefits because she filed numerous claims for such benefits based on her work-related injuries. (Def.'s Br. in Supp. of Mot. to Dis. Ex. C, pg. 1, 2, 3.) Moreover, Defendant submitted with its Motions to Dismiss the

---

[4] At the hearing, Plaintiff maintained that since the time of the Commissioner's award of benefits, her work-related injuries have resulted in further damages for which she has yet to receive compensation. She may, therefore, in the present action be seeking to recover additional damages directly from Defendant beyond the amount awarded by the Commission.

11

opinion issued by the Workers' Compensation Commission on February 27, 2012. The Commission found that Plaintiff sustained a compensable injury to her right shoulder on May 24, 2009, sustained a new injury to her neck on June 4, 2009, and sustained a compensable injury to her right shoulder on December 6, 2009. (*Id.* pg. 11–14.) The Commission awarded Plaintiff benefits for these injuries. (*Id.* pg. 16.) Having claimed and received workers' compensation benefits, Plaintiff cannot file a civil action in this Court seeking additional recovery from Defendant. The VWCA constitutes Plaintiff's exclusive remedy for any and all injuries sustained during the course of her employment. If Plaintiff disagrees with any part of the Commission's decision, her proper course is to seek review of that decision at the state level according to the procedures set forth in the VWCA. *See* Va. Code §§ 65.2-705 and 65.2-706. The VWCA's exclusivity provision bars this Court from exercising jurisdiction over any claims for recovery related to her injuries. Accordingly, to the extent that Plaintiff seeks recovery of benefits or damages related to injuries sustained during the course of her employment, this Court lacks jurisdiction over such claim, and I will dismiss the claim for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).[5]

---

[5] I recognize that some confusion persists in the Fourth Circuit as to whether the VWCA truly constitutes a jurisdictional bar in disputes involving workplace injury. *Compare Evans*, 166 F.3d at 652, *and McGowan*, 2011 U.S. Dist. LEXIS 70621 at *31, *and Glenn*, 427 F. Supp. 2d at 680, *and Hendricks*, 142 F. Supp. 2d at 756 *with Armendarez v. ABB, Inc.*, No. 7:07cv557, 2008 U.S. Dist. LEXIS 82241 at *2 n.4 (W.D. Va. Oct. 16, 2008), *and Graves v. Cook*, No. 7:01cv533, 2002 U.S. Dist. LEXIS 6794 at *2 n.1 (W.D. Va. Apr. 17, 2002). In this case, however, I find that treating the matter as jurisdictional under Rule 12(b)(1) is appropriate because the underlying facts of Plaintiff's claim for work-related injury appear largely undisputed. *Contra Graves*, 2002 U.S. Dist. LEXIS at *2 n.1. Moreover, even if the VWCA does not constitute a truly jurisdictional bar to Plaintiff's claim, it is nevertheless a legal bar. Therefore, I could properly dismiss Plaintiff's claim pursuant to Rule 12(b)(1).

Plaintiff also, however, asserts a claim for wrongful termination based on the ADA.[6] In the letter attached to her Complaint, Plaintiff asserts: "Every excuse I got from my doctor was taken to the employer. They expected me to return to work before my leave was over. I was terminated while on medical leave." (Compl.) In the form complaint, Plaintiff alleges that Defendant's real motivation for terminating her was that she was "[i]njured on the job on three separate occasion[s]." (Compl. pg. 3.) Construed liberally, therefore, the Complaint alleges that Defendant terminated Plaintiff because of a disability resulting from her work-related injuries. Defendant argues that Plaintiff has not pled sufficient facts to establish that she is a qualified individual with a disability within the meaning of the ADA. (*Id.*)

This Court may exercise federal question subject matter jurisdiction over Plaintiff's wrongful termination claim pursuant to 28 U.S.C. § 1331. Under the long standing well-pleaded complaint doctrine, "[a] case arises under the laws of the United States within § 1331 only if it is apparent from the face of a well-pleaded complaint that the plaintiff's cause of action was created by federal law, 'unaided by anything alleged in anticipation or avoidance of defenses which it is thought the defendant may interpose.'" *Mid Atl. Med. Servs., LLC v. Sereboff*, 407 F.3d 212, 217 n.5 (4th Cir. 2005) (quoting *Taylor v. Anderson*, 234 U.S. 74, 75–76 (1914)). The well-pleaded complaint rule ordinarily directs the Court "to look no farther than the plaintiff's complaint in determining whether a lawsuit raises issues of federal law capable of creating federal-question jurisdiction under 28 U.S.C. § 1331." *Custer v. Sweeney*, 89 F.3d 1156, 1165 (4th Cir. 1996) (citing *Gully v. First Nat'l Bank*, 299 U.S. 109, 112–13 (1936); *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908)). In the present case, the Complaint contains sufficient facts to raise an issue of federal law. Although Plaintiff may not allege facts

---

[6] Although the Complaint fails to specify under what statute Plaintiff seeks recovery for wrongful termination, at the hearing, she confirmed that she is proceeding under the ADA.

13

sufficient to state a claim upon which relief can be granted, she has alleged that she was injured on the job, that those injuries resulted in "serious limitations," and that she was terminated because of her injuries. (Compl.) While not eloquently stated, these basic facts are sufficient to raise the threshold federal issue of whether Plaintiff states a claim under the ADA.[7] At the very least, it is apparent from the face of the Complaint that federal law creates Plaintiff's intended cause of action. Accordingly, I find that this Court may exercise subject matter jurisdiction, and I proceed to consider whether the Complaint fails to state a claim under Rule 12(b)(6).

> B. Defendant's Motion to Dismiss for Failure to State a Claim Pursuant to Rule 12(b)(6)

Plaintiff fails to state a claim upon which relief may be granted under the ADA. To withstand a Rule 12(b)(6) motion in an ADA case, a complaint need not establish a *prima facie* case because a '*prima facie* case . . . is an evidentiary standard, not a pleading requirement.'" *Quattlebaum v. Earl Industries, LLC*, No. 2:05cv356, 2005 U.S. Dist. LEXIS 32419 at *5 (E.D. Va. Sept. 2, 2005) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002)). The Fourth Circuit has clarified, however, that "although a plaintiff need not 'forecast evidence,' nor plead sufficient facts to prove her case, 'as an evidentiary matter, in her complaint a plaintiff is

---

[7] I recognize that the existence of subject matter jurisdiction depends on the assertion of a substantial federal claim. *See, e.g.*, *Boots at the Booth v. General Servs. Admin.*, No. 7:10cv507, 2010 U.S. Dist. LEXIS 125200 at *6 (W.D. Va. Nov. 24, 2010) (citing *Garraghty v. Virginia Retirement System*, 200 Fed. Appx. 209, 211 (4th Cir. 2006)). Rule 12 authorizes a district court to dismiss a "patently insubstantial complaint . . . for want of subject matter jurisdiction." *Neitzke v. Williams*, 490 U.S. 319, 327 n.6 (1989). Although this case presents a close call, I cannot find, at the present time, that Plaintiff's wrongful discharge claim is so patently meritless, frivolous, and unsubstantial as to warrant dismissal based on lack of subject matter jurisdiction. Because Plaintiff has alleged so few facts, I cannot pass on the ultimate merits of her claim at this time. Moreover, because such "'jurisdictional facts are intertwined with facts central to the merits of the dispute,'" I cannot, at this time, go beyond the allegations of the complaint and consider evidence beyond the pleadings. *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347–48 (4th Cir. 2009) (quoting *Adams*, 697 F.2d at 1219). Accordingly, I decline to find Plaintiff's wrongful discharge claim so insubstantial as to warrant dismissal for lack of subject matter jurisdiction at this time.

14

required to allege facts that support a claim for relief.'" *Id.* at *5–6 (quoting *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003), *cert. denied*, 540 U.S. 940, 124 S. Ct. 301 (2003)). To plead a claim for wrongful discharge under the ADA, Plaintiff must allege that: "(1) she was a 'qualified individual with a disability;'" (2) she was discharged; (3) she was fulfilling her employer's legitimate expectations at the time of discharge; and (4) the circumstances of her discharge raise a reasonable inference of unlawful discrimination." *Rohan v. Networks Presentations LLC*, 375 F.3d 266, 273 n.9 (4th Cir 2004) (citing *Haulbrook v. Michelin N. Am., Inc.*, 252 F.3d 696, 702 (4th Cir. 2001)).

To come within the ADA's scope, therefore, Plaintiff first must allege that she is disabled within the meaning of the ADA. *Pollar v. High's of Balt., Inc.*, 281 F.3d 462, 467 (4th Cir. 2002) (citing 42 U.S.C. §§ 12111(2), 12112(a)); *Settle v. S.W. Rodgers, Co.*, 998 F. Supp. 657, 661 (E.D. Va. 1998). The ADA defines a "disability" as: (1) "a physical or mental impairment that substantially limits one or more of the major life activities of such individual;" (2) "a record of such an impairment;" or (3) "being regarded as having such an impairment." 42 U.S.C. § 12102(2). Moreover, an impairment's impact on a major life activity must be "permanent or long-term." *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 188 (2002). "[A] temporary impairment . . . will generally not qualify as a disability under the ADA. An impairment simply cannot be a substantial limitation on a major life activity if it is expected to improve in a relatively short period of time." *Pollar*, 281 F.3d at 468. Furthermore, the statutory language "substantially limits" requires, at a minimum, "that plaintiffs allege they are unable to work in a broad class of jobs." *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 479–84 (1999).

Plaintiff has failed to allege that she is or was perceived as being disabled within the meaning of the ADA. The letter attached to the Complaint states only:

15

> They expected me to return to work before my leave was over. I was terminated while on medical leave . . . I am left with tremor in my hand and my right shoulder/arm hurts to this date. I have serious limitations with what I can and cannot do my [sic] arm.

(Compl.) Although Plaintiff alleges that she has "serious limitations" as to what she can do with her right arm, she fails to allege that her impairment "substantially limits" her ability to work because she does not claim that she is unable to work in a broad class of jobs. *Quattlebaum*, 2005 U.S. Dist. LEXIS 32419 at *12. Plaintiff merely asserts that Defendant terminated her and does not allege that her injuries disqualify her from similar jobs in the job market as a whole. *Id.* at *13 (*Sutton*, 527 U.S. at 490–91; *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 200 (4th Cir. 1997)); *see also Williams v. Channel Master Satellite Sys.*, Inc., 101 F.3d 346, 349 (4th Cir. 1996) (internal citations omitted). Plaintiff alleges no major life activity that her injuries preclude her from performing. At most, she alleges that she has limited use of her arm. Furthermore, she pleads no facts regarding the permanency or duration of her condition or her likelihood of recovery. The Fourth Circuit has held that "it is evident that the term 'disability' does not include temporary medical conditions, even if those conditions require extended leaves of absence from work." *Halperin*, 128 F.3d at 199 (internal citations omitted). Therefore, the mere fact that Plaintiff was on leave at the time of termination does not show disability for the purposes of Rule 12(b)(6).

Even if the Complaint sufficiently alleges that Plaintiff is disabled, it nonetheless fails to state a claim because it does not allege that she is a "qualified individual with a disability." *Tyndall v. National Educ. Ctrs. Inc.*, 31 F.3d 209, 2012 (4th Cir. 1994). The ADA defines a "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). "A job function is essential if it 'bears

16

more than a marginal relationship to the job at issue.'" *Rohan*, 375 F.3d at 279 (quoting *Tyndall*, 31 F.3d at 213). After the plaintiff establishes the essential functions of the job in question, she must show that she could perform all such functions with or without reasonable accommodation. *Tyndall*, 31 F.3d at 213. In the context of a Rule 12(b)(6) motion, the plaintiff must include facts in the complaint showing that she is qualified. *Id.* In the present case, the Complaint does not allege that Plaintiff was qualified for her job at the time of her termination. On the contrary, the Complaint explicitly states that Plaintiff was on leave at the time. "An employee who cannot meet the attendance requirements of the job at issue cannot be considered a 'qualified individual' protected by the ADA.'" *Id.* Furthermore, the Complaint fails to allege that she could have performed the essential functions of the job if afforded reasonable accommodation. This Court recognizes that, in certain circumstances, a temporary leave of absence from employment may be a reasonable accommodation. *Wilson v. Dollar Gen. Corp.*, No. 4:11cv24, 2012 U.S. Dist. LEXIS 28148 at *33 (W.D. Va. Mar. 5, 2012) (citing *Kitchen v. Summers Continuous Care Ctr., LLC*, 552 F. Supp. 2d 589, 596 (S.D. W. Va. 2008)). Even assuming that continued leave from work would have been a reasonable accommodation under the circumstances, however, Plaintiff does not allege that additional leave would have allowed her to return to work within a reasonable period of time. *Id.* Therefore, the Complaint fails to allege that Plaintiff was a qualified individual with a disability within the protection of the ADA. In addition, the Complaint contains no allegation that Plaintiff was fulfilling Defendant's legitimate expectations as an employee at the time of her termination.[8]

---

[8] In its Brief in Support of its Motions to Dismiss and Alternative Motion for More Definite Statement, Defendant argues that the materials attached to the Complaint affirmatively show that Plaintiff was not fulfilling her employer's legitimate expectations at the time of her termination and that the circumstances of her discharge fail to raise an inference of unlawful discrimination. (Br. in Supp. of Def.'s Mot. to Dis. pg. 11, 12.) On a Rule 12(b)(6) motion, courts may consider

The Complaint fails to state a claim upon which relief can be granted. Plaintiff has not alleged that she suffers from a disability or that she could perform the essential functions of her position with or without reasonable accommodation. Accordingly, I will dismiss Plaintiff's claim for wrongful discharge for failure to state a claim pursuant to Rule 12(b)(6). I will grant Plaintiff leave to amend her Complaint as to the wrongful discharge claim to correct the omissions and deficiencies set forth above.[9] Because I dismiss the claim under Rule 12(b)(6), I find no need to convert Defendant's motion into one for summary judgment.[10]

---

documents attached to a complaint provided they are "integral to the complaint and authentic." *Philips v. Pitt County Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citing *Blankenship v. Manchin*, 471 F.3d 523, 526 n. 1 (4th Cir. 2006)). The EEOC's Dismissal and Notice of Rights and rights to sue letter, however, are not integral to the Complaint. In fact, Plaintiff does not refer to or mention the materials in her Complaint. Accordingly, I will not consider these materials for purposes of Defendant's Rule 12(b)(6) motion.

[9] The Fourth Circuit has recognized:

> A dismissal under Rule 12(b)(6) generally is not final or on the merits and *the court normally will give plaintiff leave to file an amended complaint*. The federal rule policy of deciding cases on the basis of the substantive rights involved rather than on technicalities requires that plaintiff be given every opportunity to cure a formal defect in his pleading. This is true even though the court doubts that plaintiff will be able to overcome the defects in his initial pleading. Amendment should be refused only if it appears to a certainty that plaintiff cannot state a claim. The better practice is to allow at least one amendment regardless of how unpromising the initial pleading appears because except in unusual circumstances it is unlikely that the court will be able to determine conclusively on the face of a defective pleading whether plaintiff actually can state a claim.

*Ostrzenski v. Seigel*, 177 F.3d 245, 252–53 (4th Cir. 1999) (quoting 5A Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357, at 360-67 (2d ed. 1990)).

[10] "It is well settled that district courts may convert a Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment, allowing them to assess whether genuine issues of material fact do indeed exist." *Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450 (4th Cir. 2007) (citing *George v. Kay*, 632 F.2d 1103, 1106 (4th Cir. 1980); 5C *Charles Alan Wright & Arthur R.*

## IV. CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss Plaintiff's claim for workers' compensation benefits or damages for common law personal injury pursuant to Rule 12(b)(1) is **GRANTED**, and that claim is **DISMISSED** with prejudice. Defendant's motion to dismiss Plaintiff's claim for wrongful discharge under the ADA pursuant to Rule 12(b)(6) is **GRANTED WITH LEAVE TO AMEND** her Complaint within twenty-one (21) days from entry of this order.

The clerk is directed to send a copy of this Memorandum Opinion and the accompanying Order to Plaintiff, *pro se*, and counsel for Defendant.

Entered this 24th day of April, 2012.

                                           s/Jackson L. Kiser
                                           SENIOR UNITED STATES DISTRICT JUDGE

---

*Miller*, *Federal Practice and Procedure* § 1366, at 159-65 & n.17 (3d ed. 2004)). This "conversion takes place at the discretion of the court, and at the time the court affirmatively decides not to exclude extraneous matters." *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk S. Corp.*, 109 F.3d 993, 996 (4th Cir. 1997) (internal quotation marks omitted) (citing *Aamot v. Kassel*, 1 F.3d 441, 445 (6th Cir. 1993); *Manze v. State Farm Ins. Co.*, 817 F.2d 1062, 1066 (3rd Cir. 1987); 9 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2363, at 259 (2d. ed. 1995)).